UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 11-20723-CIV-GOODMAN

[CONSENT CASE]

BONNIE COOK,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD, a Liberian
Corporation,

    Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION *IN LIMINE*
CONCERNING SAFETY RECOMMENDATIONS AND GUIDELINES**

This cause is before the Court on Defendant's Motion *In Limine* to Preclude Evidence, Testimony or Argument Regarding Inapplicable Recommendations and Guidelines as Irrelevant and Prejudicial [ECF No. 61]. The Court has reviewed the motion, Plaintiff's Response [ECF 83] and additional post-hearing submissions [ECF Nos. 100; 111; 117; 119]. In addition, the Court held an omnibus, multi-hour hearing on myriad *in limine* motions, including the one at issue here. [ECF No. 97]. For the reasons below, the Court **grants in part** and **denies in part** the motion.

### I.    INTRODUCTION

Plaintiff alleges she was a passenger aboard the Defendant's cruise ship *M/S Oasis of the Seas* on May 16, 2010, when she tripped and "fell on the abrupt change in elevation in the walkway near the entrance to the Park Café," causing a severely fractured left hip requiring major surgery. [ECF No. 1, ¶¶ 8, 11]. According to Plaintiff, the change in elevation was in a

Case No. 11-20723-CIV-GOODMAN

[CONSENT CASE]

designated, accessible pedestrian walkway but was an uncommon type of design or construction that "violated national and international codes, standards, guidelines, and recommendations applicable to changes in levels of such walkway surfaces."

Plaintiff therefore contends that Royal Caribbean negligently breached its duty to exercise reasonable care under the circumstances by designing (or approving the design of) the allegedly "abrupt change in floor level" near the restaurant entrance, by failing to correct the condition and by failing to sufficiently warn of its existence. [*Id.* at ¶ 8].

Based on Plaintiff's discovery and the deposition testimony and reports provided by her expert witnesses, Royal Caribbean anticipates that Plaintiff will try to present evidence of certain standards, guidelines and/or recommendations. Specifically, Royal Caribbean's motion targets the following guidelines and recommendations: the American Society of Testing and Materials (ASTM) Designation: F 1637-5, International Maritime Organization (IMO) MSC Circular 735, the Marine Committee of the Illuminating Engineering Society of North America's (IES) "Recommended Practice for Marine Lighting," the draft Passenger Vessel Accessibility Guidelines (PVAG) dated June 26, 2008, and the National Fire Protection Association (NFPA) NFPA-101: "Life Safety Code."

Defendant brands these as "altogether irrelevant to determining whether Defendant satisfied its duty of care to Plaintiff" and seeks to exclude them from the trial. [ECF No. 82, p. 61]. At bottom, Defendant contends that these sources have no force of law and are inapplicable to the foreign-flagged cruise ship where Plaintiff purportedly fell. Royal Caribbean also argues that evidence of these guidelines, standards and recommendations would confuse the finder of fact (i.e., the Court) and would be unduly prejudicial.

Plaintiff, of course, objects to the motion. She responds that even non-binding standards and regulations, which do not have the force of law, are still *admissible* on the issue of negligence and that a federal court (in a bench trial) or jury may evaluate them when determining the applicable standard of care. She also posits that these sources are admissible to demonstrate notice to the Defendant.

## II.     DISCUSSION

This case involves an alleged tort committed aboard a ship sailing in navigable waters. General maritime law, as developed by the federal courts, therefore applies. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989). In *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 (1959), the Supreme Court held that the owner of a ship in navigable waters "owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." The former Fifth Circuit Court of Appeals has held that this duty extends to a ship's passengers. *Gibboney v. Wright*, 517 F.2d 1054, 1059 (5th Cir. 1975).

A carrier by sea, however, is not an all-purpose insurer of its passengers' safety. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984), *cert. denied* 470 U.S. 1004 (1985). A carrier is "liable to passengers . . . only for its negligence." *Id.* at 1334. The "benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322 (involving claim brought by a cruise ship passenger who slipped and fell on a wet spot while dancing at the ship's outdoor discotheque);

*see also Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 64 (2d Cir. 1988) (noting that this standard "parallels [the] treatment of landowners' liability for dangerous conditions" and reversing judgment for plaintiff in bench trial because the record did not support the finding that the shipowner had constructive notice of the injury causing hazard).

Put another way, the "principles of shipowner's liability in negligence for injuries to passengers 'differ little from those in use ashore.'" *Monteleone*, 838 F.2d at 65 (quoting G. GILMORE & C. BLACK, THE LAW OF ADMIRALTY 23 n.77 (2d ed. 1975)). Analogizing cruise ship liability to landowners' liability is "especially apt where the hazard encountered is not unique to the marine environment." *Monteleone*, 838 F.2d at 65. For example, a screw protruding from the edge of a step on a cruise ship is "a condition in no way peculiar to maritime travel" and therefore a court judges a shipowner's culpability for injuries arising from this condition under the same standard that applies to a landowner. *Id.*; *see also Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 172 (2d Cir. 1983) (holding that the standard applicable to landowners applied where a passenger tripped over a stool on a ship's dance floor because there was no indication the stool reached the dance floor as a result of any "condition . . . peculiar to maritime travel").

In the instant case, Plaintiff tripped and fell over a change in elevation outside of a restaurant located in an open atrium area of a large passenger cruise ship. Plaintiff's allegations of negligence do not concern conditions unique to maritime travel. To the contrary, the circumstances surrounding the injury could also exist on land and lead to a lawsuit filed, for example, by a person who tripped over a change in elevation leading up to a shopping mall restaurant. Thus, in *Keefe*, 867 F.2d at 1321–22, the Eleventh Circuit cited with approval cases that applied the ordinary, reasonable landowner care standard to shipowners where the shipboard hazard was of the type also found on land. *See, e.g., Rainey*, 709 F.2d at 172 (also suggesting

4

Case No. 11-20723-CIV-GOODMAN

[CONSENT CASE]

that "[t]he extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger, will determine how high a degree of care is reasonable in each case").[1]

Defendant seeks to exclude the standards/guidelines at issue because they are not mandatory, do not have the force of law and are not always directly applicable to maritime conditions. But the law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence. *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir. 1975) (affirming admission of advisory materials published by the Federal Aviation Administration); *Frazier v. Continental Oil Co.*, 568 F.2d 378 (5th Cir. 1978) (reversing trial judge's order granting a directed verdict to defendant because district court improperly failed to consider expert witness testimony based on industry standards in the National Fire Protection Association Code).

District court judges in the Eleventh Circuit have followed the rule that "failure to follow recognized rules that are not mandatory is admissible to show how a reasonable person might have acted." *Darville v. Rahming Shipping, Ltd.*, No. 85–1282–CIV–MARCUS, 1987 WL 48393, at *10 (S.D. Fla. Dec. 17, 1987) (rejecting argument that regulations for vessel of one size were irrelevant to one of a smaller size because "it is arguable that [defendant's] failure to fulfill [non-binding] Coast Guard or other maritime requirements still constituted some evidence of negligence").

---

[1] The *Keefe* court described *Rainey* as a case "practically indistinguishable" from *Keefe*. 867 F.2d at 1322.

5

Case No. 11-20723-CIV-GOODMAN

[CONSENT CASE]

Not surprisingly, other federal districts and circuits have followed this evidentiary rule, as have state appellate courts. *See, e.g., Robertson v. Burlington N. R.R. Co.*, 32 F.3d 408 (9th Cir. 1994) (holding trial court did not err by admitting federal OSHA noise-level standards and advising the jury that they were not binding and could not, standing alone, be used to establish negligence as a matter of law); *Giorgio v. Holland Am. Line, Inc.*, No. C05-0038JLR, 2006 WL 1042003, at *2 (D. Wash. Apr. 4, 2006) ("[r]egulations that are not binding by force of law, and therefore do not establish negligence per se, may nonetheless be admitted for the purpose of aiding the finder of fact in determining the applicable standard of care"); *Donlon v. Gluck Grp., LLC*, No. 09-5379 (JEI/KMW), 2011 WL 6020574, at *6 (D.N.J. Dec. 2, 2011) (denying summary judgment motion filed by houseboat manufacturer in lawsuit filed by person who fell down the stairs of a houseboat, holding that non-binding standards promulgated by the American Society for Testing and Materials were admissible because a jury could use the evidence to conclude that the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs"); *Alderman v. Wysong & Miles Co.*, 486 So. 2d 673 (Fla. 1st DCA 1986) (affirming judgment entered in defendant's favor in a products liability action and rejecting argument that trial court improperly admitted evidence of industry standards provided by a private, voluntary organization).

Framed by these principles, the Court rejects Royal Caribbean's efforts to exclude all evidence and use of four of the guidelines -- ASTM Designation: F 1637-95; IMO Circular 735; Draft PVAG dated June 26, 2008; and NFPA-101 -- but grants its request to exclude all evidence and use of the IES "Recommended Practice for Marine Lighting."

Case No. 11-20723-CIV-GOODMAN

[CONSENT CASE]

### a. ASTM Designation: F 1637-95

Although the American Society of Testing and Materials "Standard Practice for Safe Walking Surfaces" is a land-based, voluntary recommendation with no force of law, it may still be used as some evidence of the applicable standard of care. As discussed above, the injury here is the type which can and does also occur in similar ways on land. As a result, the Court cannot conclude at this stage that a guideline for a land-based walkway is completely irrelevant to a passenger walkway on a large cruise ship, especially when the area involved is designed to look like a well-known park which is actually situated on land.

### b. IMO Circular 75

Likewise, it would be premature to find that the IMO Circular 75 is altogether irrelevant in this case. Defendant acknowledges that this circular provides non-binding recommendations concerning "barrier free passage for elderly and disabled persons in public spaces on board" ferries, a type of ship, and Plaintiff may well be classified as elderly. Royal Caribbean may certainly stress at trial that the publication applies by its terms to ferries, not cruise ships, and that the circular is non-binding. But given its application to ships and the elderly, these other considerations are insufficient to preclude completely its use at trial (especially a bench trial, where the Court can determine what weight, if any, to afford these recommendations).

### c. Draft Passenger PVAG Dated June 26, 2008

The Court appreciates that the Draft Passenger Vessel Accessibility Guidelines are, as their name suggests, only in draft form. Nevertheless, the Court finds that this draft could be evidence relating to the applicable standard of care and notice. Royal Caribbean may attack the guidelines as being only in draft form and may also seek to undermine the relevance of the guidelines by arguing that they concern accessible walkways for disabled persons (and that

7

Case No. 11-20723-CIV-GOODMAN

[CONSENT CASE]

Plaintiff is not disabled). However, these challenges relate to how much weight, if any, the court should give the guidelines, and they do not generate sufficient reason to exclude all references to them. Plaintiff might also be able to demonstrate that the draft guidelines somehow support her theory that Defendant was on notice that the design of the change in elevation outside the restaurant was unreasonably dangerous to passengers.

### d. NFPA-101 Life Safety Code

The Life Safety Code is subject to the same analysis -- and conclusion -- as the other standards. Yes, it is not binding. Yes, it concerns changes in level in means of egress and Plaintiff tripped while walking *into* a restaurant. And yes, the recommendations address the means to escape from fire or other hazards but Plaintiff was not trying to avoid a fire. Nevertheless, all of these distinctions may be addressed at trial in the form of the myriad challenges the Court has already described.

### e. IES "Recommended Practice for Marine Lighting"

The Court, however, grants the motion as to the IES "Recommended Practice for Marine Lighting." As its name suggests, this standard deals exclusively with "lighting." Plaintiff does not allege that deficient lighting caused her to trip and Plaintiff's expert witnesses do not base their conclusions on this IES recommended lighting practice. This standard is therefore irrelevant and Plaintiff may not rely on this standard at trial or in her proposed findings of fact and conclusions of law.

Case No. 11-20723-CIV-GOODMAN

[CONSENT CASE]

### III.  CONCLUSIONS

The Court grants Royal Caribbean's motion *in limine* concerning the IES "Recommended Practice for Marine Lighting" but denies it as to the other four guidelines/recommendations.

These rulings, of course, do not mean that Royal Caribbean cannot challenge further the four standards to which its motion is denied. The mere fact that the Court is not excluding these four guidelines/recommendations does not mean that the Court has already decided to place any substantive weight on them. That decision must await trial, where Royal Caribbean is certainly free to cross-examine Plaintiff's experts about the voluntary nature or alleged inapplicability of these guidelines. Defendant may also elicit testimony from its own experts about these guidelines. And it may even argue that the Court should give these guidelines little or no weight and reiterate these arguments in its proposed findings of fact and conclusions of law. Such measures are sufficient to prevent unfair prejudice from the introduction of these standards in a bench trial. *See, e.g., Darville,* 1987 WL 48393, at *10 (explaining that defendant company which built the ship and installed the onboard pump "is entitled to refute the Plaintiffs' contention that the [vessel] did not meet vessel construction standards"); *Alderman,* 486 So. 2d at 679 (noting that appellant plaintiff "was allowed ample opportunity to present evidence and jury argument that the ANSI standards admitted into evidence were too nebulous to constitute proof of the applicable safety standards in the press brake industry").

**DONE and ORDERED**, in Chambers, in Miami, Florida, this ___ day of May, 2012.

Jonathan Goodman
United States Magistrate Judge

**Copies furnished to:** All counsel of record